IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| TAYLOR PACKWOOD, et al., | Case No. 22-cv-02741-MMC |
|---|---|
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS; GRANTING PLAINTIFF WOOD'S REQUEST TO DISMISS HER CLAIMS; AFFORDING PLAINTIFF PACKWOOD LEAVE TO AMEND** |
| v. | |
| COUNTY OF CONTRA COSTA, et al., | |
| Defendants. | |

Before the Court are three motions:  (1) "Motion to Dismiss the First Amended Complaint and Request to Declare Plaintiffs Vexatious Litigants," filed July 27, 2022, by defendants County of Contra Costa ("County"), Contra Costa Children and Family Services ("CFS"), Contra Costa County Office of the Sheriff ("Office of the Sheriff"), David Livingston ("Sheriff Livingston"), Kellie Case ("Case"), Edyth Williams ("Williams"), Cecelia Gutierrez ("Gutierrez"), and Acadia Chidi ("Chidi") (collectively, "County Defendants"); (2) "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12," filed August 3, 2022, by defendant Mary P. Carey ("Carey"); and (3) "Motion to Dismiss First Amended Complaint Pursuant to FRCP 12(b)(6)," filed August 4, 2022, by defendants Erica Bains and Ravinder Bains (collectively, "the Bains").  Plaintiffs Taylor Packwood ("Packwood") and Andrea Wood ("Wood") have filed, pro se, several documents (see Docs. No. 36, 38-43), which filings the Court construes as responses to the motions.  County Defendants, Carey, and the Bains have filed replies.

By prior order, the Court took the matters under submission.  Having read and

//

considered the papers filed in support of and in response to the motions,[1] the Court rules as follows.[2]

## BACKGROUND

The operative complaint, the Amended Complaint ("AC"), filed July 11, 2022, comprises, in addition to a caption page, the following three documents: (1) a document titled "Summary Claims of Taylor Packwood" (hereinafter, "AC Summary"); (2) a document titled "Complaint" (hereinafter, "AC Compl."), and (3) a document titled "Personal Statement of Wood" ("AC Statement").[3] In these documents, plaintiffs base claims on (1) the removal of Wood's children from her home, namely, Packwood, "H.P.," and "K.P.," (2) events allegedly occurring during the course of subsequent child dependency proceedings in state court, and (3) the conditions to which Packwood was allegedly subjected while in the custody of the County.

In particular, plaintiffs allege that, in August 2017, Packwood lived with Wood and his two younger siblings in Orinda, California, and that "Wood provided for her children love plus all of the material necessities and luxuries of an affluent lifestyle, including nutritious food, clothing, medical care, education, sports, and extracurricular activities." (See AC Compl. ¶ 20.) According to plaintiffs, Erica Bain, a "former teacher" and a person who "devised a scheme . . . to take custody of one or more of Wood's children," called CFS, as well as the Office of the Sheriff, and "falsely stated that Wood's children were in danger." (See AC Compl. ¶¶ 21, 28.)[4]

---

[1] On September 26, 2022, E. Vincent Wood filed a notice of appearance on behalf of Packwood and Wood. Said counsel has not, however, sought leave to file any response to the motions.

[2] As noted, the motion to dismiss filed by County Defendants includes a request, joined by the Bains, that the Court declare plaintiffs vexatious litigants. The Court has addressed such request by separate order filed concurrently herewith.

[3] The sole difference between the initial complaint and the AC is the addition of Carey as a named defendant in the caption.

[4] Plaintiffs do not further identify the statement(s) allegedly made by Erica Bains.

On August 17, 2017, Gutierrez, a CFS employee (see AC Compl. ¶ 17), and Sheriff Livingston are alleged to have "arrived at Wood's home" without a warrant, "intent on taking the children," "forcibly entered" without knocking, and "demanded" to take the children. (See AC Compl. ¶¶ 29, 31.) At that time, according to plaintiffs, the children's maternal grandmother was staying at the home, Wood having left two days earlier on a "business" trip. (See AC Compl. ¶ 27.) Gutierrez and Sheriff Livingston allegedly "forcibly removed all three children, including [Packwood], from the home, over [the grandmother's] objections, and took them into custody." (See AC Compl. ¶ 33.)

Plaintiffs allege that, "at no time did Sheriff [Livingston] obtain any kind of warrant," that "[a]t no time did Gutierrez or any CFS agent or any Sheriff reasonably believe that Wood's children had been seriously injured, or that they were in imminent danger," and that neither CFS nor Sheriff Livingston "conduct[ed] any meaningful investigation" into the report made by Erica Bains. (See AC Compl. ¶ 30.) Additionally, according to plaintiffs, "CFS and Sheriff [Livingston] falsified information about the living condition of the house as an excuse for the search." (See AC Compl. ¶ 32.)

Plaintiffs allege that, in subsequent child dependency proceedings, the state court made numerous errors. In particular, plaintiffs allege that: (1) after Gutierrez and Case, who, like Gutierrez, was a CFS employee (see AC Compl. ¶ 16), each testified that Wood had not taken her children "to the doctor or dentist," that there "was not enough food" in the house, and that there were "fleas and feces" in the house (see AC Summary ¶ 5), the state court denied Wood's attempts to offer evidence to contradict such testimony (see AC Statement at 32);[5] (2) the state court "later" allowed Wood to offer evidence to contradict the testimony of Case and Gutierrez but then "removed" Wood's evidence from the record (see id.); (3) the state court allowed Chidi, another CFS employee (see AC

---

[5] The AC Statement, unlike the AC Summary and AC Complaint, is divided into separate sections, with the paragraphs thereunder each again beginning with the number 1. Consequently, in citing to the AC Statement, the Court has used herein the page number affixed to the top of the page by this district's electronic filing program.

Compl. ¶ 18), "to testify off record," testimony to which Packwood and Wood were "unable to respond" (see AC Summary ¶ 12); (4) the state court "denied" Packwood's request for "transcripts" (see AC Summary ¶ 27); (5) although Packwood "begged in court to be returned home," the state court "refused to let him go until a later date," causing him to be subjected to "a wrongful imprisonment" (see AC Statement at 40); (6) although Erica Bains "admitted" in court that she "made false police reports," the state court would not send her to "jail" (see AC Summary ¶ 30); (7) the state court "altered, redacted, and blocked" the "court transcript records" (see AC Statement at 33), including by removing "[s]ome of [Packwood's] testimony" and "chang[ing]" other parts of his testimony (see AC Statement at 37-38); (8) the state court conducted "a Northern-Korean closed door" hearing (see AC Statement at 36); and (9) after the initial judge assigned to the dependency proceeding "recused herself," the second judge "erred" by allowing that judge's decisions "to stand" (see AC Summary ¶ 24; see also AC Statement at 43).

Additionally, according to plaintiffs, (1) Case, during the course of the dependency proceedings, along with Williams, also a CFS employee (see AC Compl. ¶ 15), and Erica Bains, "used coercive tactics in an attempt to suborn perjured testimony from [Packwood] against Wood" (see AC Compl. ¶¶ 36-37, 60; AC Summary ¶ 6); (2) Case and Gutierrez "perjured themselves" when testifying about Wood's history and the conditions of the home at the time of the removal (see AC Summary ¶ 5); and (3) Chidi "falsely testified" about how many "criminal conviction[s]" she had (see AC Compl. ¶ 35).

Plaintiffs further allege that Packwood incurred injuries as a result of the conditions of his custody. In that regard, plaintiffs allege Packwood was in the custody of the County from August 17, 2017, the date on which he was removed from Wood's home, until December 2017, when he was "released back to Wood" (see AC Compl. ¶ 40), and that, during such custodial period, he was given "excessive and inappropriate quantities of 'psychotropic drugs'" against his will (see AC Summary ¶ 4), "molested" by Ravinder Bains, a "county supervised foster parent" (see AC Summary ¶ 9), and "put overnight in a filthy crime ridden, drug and sex filled Adult Homeless Shelter," where he "believed his

4

life was in danger" (see id.)

The specific Causes of Action asserted by plaintiffs are set forth in the AC Compl. Those Causes of Action are titled, respectively, "I. Illegal Seizure in Violation of the Fourth Amendment and 42 U.S.C. § 1983," "II. Illegal Removal and Detention in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983," "III. Conspiracy to Deprive Plaintiffs of Rights," "IV. Declaratory Judgment," and "V. False Arrest and Intentional Infliction of Emotional Distress Under State Law."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

As noted, defendants seek dismissal of the AC in its entirety.

At the outset, the Court notes that, in response to defendants' motions, Wood filed a document titled "Motion to Remove A.W., as Plaintiff," also titled "Request for Removal of Plaintiff Wood Requested," in which Wood states that Packwood "shall remain the only [p]laintiff." (See Doc. No. 43.) The Court construes said filing as a request for voluntary dismissal of Wood's claims. So construed, Wood's request will be granted, as no defendant has filed an answer or a motion for summary judgment. See Fed. R. Civ. P. 41(a)(1)(A) (providing plaintiff may voluntarily dismiss action by filing "notice of dismissal before the opposing party serves either an answer or a motion for summary judgment").

Accordingly, to the extent defendants seek dismissal of Wood's claims, the motions will be denied as moot.

The Court next considers in turn the arguments made in the motions to dismiss as to the claims asserted by Packwood.

**A. County Defendants' Motion to Dismiss**

    **1. All Claims**

County Defendants argue that the instant action is subject to dismissal for lack of subject matter jurisdiction under the Rooker–Feldman doctrine, see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), which doctrine precludes a district court from "review[ing] the final determinations of a state court in judicial proceedings," even where "the challenge to the state court decision involves federal constitutional issues," see Doe & Associates Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001). "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the de facto equivalent of such an appeal." See Cooper v. Ramos, 704 F.3d 772, 777 (9th Cir. 2012) (internal quotation and citation omitted).

A "de facto appeal," for purposes of the Rooker-Feldman doctrine, is a federal civil action in which the claim is "inextricably intertwined with the state-court judgment"; in

other words, the claim "succeeds only to the extent that the state court wrongly decided the issues before it." See id. at 778 (internal quotation and citation omitted). "There are two kinds of cases in which such a forbidden de facto appeal" ordinarily arises, namely, cases in which the federal plaintiff "complain[s] of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff[ ] based on an allegedly erroneous ruling by that court" or "complain[s] of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." See Noel v Hall, 341 F.3d 1148, 1163 (9th Cir. 2003). The doctrine does not apply, however, to cases where the federal plaintiff alleges a "legal injury caused by an adverse party." See id. at 1163-64 (holding claim that private party breached fiduciary duties allegedly owed to plaintiff not barred by Rooker-Feldman doctrine, even though "very similar, perhaps identical, fiduciary duty claim" had been litigated in state court action).

Here, the Court finds some of Packwood's claims are inextricably intertwined with the state court judgment, specifically, Packwood's claims that he was deprived of due process based on allegedly erroneous decisions by the state court. Packwood's due process claim, to such extent, although not asserted against the state court directly, cannot succeed without a showing that "the state court wrongly decided the issues before it." See Cooper, 704 F.3d at 778 (internal quotation and citation omitted); see also id. at 781-82 (affirming, under Rooker-Feldman doctrine, dismissal of claim for damages against district attorney and criminologist, where claimed entitlement to relief was "contingent upon a finding that the state court decision [was] in error").

Accordingly, to the extent Packwood's due process claim is based on his allegations that the state court erred in determinations made in the course of the dependency proceeding, the claim is subject to dismissal for lack of subject matter jurisdiction.

Packwood's remaining claims against County Defendants, however, seek relief under a theory that his asserted injuries were caused by conduct by one or more County

Defendants, as opposed to conduct by the state court, namely, that (1) Gutierrez and Sheriff Livingston wrongfully removed Packwood from his home, (2) Case and Williams attempted to coerce Packwood into giving false testimony against Wood, (3) Case, Gutierrez, and Chidi provided false testimony during the course of the dependency proceedings, and (4) County Defendants were responsible for the conditions of confinement of which he complains. Such claims are not barred by the Rooker-Feldman doctrine, and, consequently, the Court next considers County Defendants' additional arguments as they pertain to those claims.

### 2. First Cause of Action: Fourth Amendment and Section 1983[6]

As noted, Packwood alleges Gutierrez and Sheriff Livingston wrongfully removed him from his home without a warrant.

"There are narrow circumstances in which the government may constitutionally remove children from their families temporarily without judicial authorization." Demaree v. Pederson, 887 F.3d 870, 878 (9th Cir. 2018). "In an emergency, government officials may take a child out of [his/her] home and away from [his/her] parents without a court order when officials have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." Id. (internal quotation and citation omitted). The Fourth Amendment, however, "protects children from removal from their homes absent such a showing." See Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007).

#### a. Collateral Estoppel

County Defendants contend Packwood's Fourth Amendment claim is barred by the collateral estoppel doctrine, specifically, issue preclusion. In support thereof, County Defendants cite to a decision of the California Court of Appeal in which said court ruled against Wood on an appeal she filed, and, in particular, found "[t]he children were

---

[6] Although, as indicated earlier herein, Packwood has only identified his Causes of Action by Roman numeral and descriptive title, the Court, for ease of reference, has used the traditional means of reference.

properly detained." (See County Defs.' Req. for Judicial Notice Ex. A at 4.)[7]

Under California law, "the doctrine of issue preclusion precludes litigation of issues argued and decided in prior proceedings when six criteria are met." See White v. City of Pasadena, 671 F.3d 918, 927 (9th Cir. 2012) (internal quotation and citation omitted). "These criteria are: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue to be precluded must have been actually litigated in the former proceeding; (3) the issue to be precluded must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding; and (6) application of issue preclusion must be consistent with the public policies of preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." Id. (internal quotations and citation omitted).

The judgment obtained in state court from which Wood appealed was a "dispositional order removing H.P. and K.P. from [Wood's] care and continuing their placement in foster care" (see County Defs.' Req. for Jud. Notice. Ex. A at 4),[8] and, in her appeal therefrom, Wood sought review of "orders of the juvenile court assuming jurisdiction over two of her children, removing them from her care and placing them in foster care" (see County Defs.' Req. for Jud. Notice Ex. A at 1). Consequently, the Court of Appeal's finding that the "children" were properly removed (see id. Ex. A at 4) was a reference to H.P. and K.P., as no issue as to the lawfulness of Packwood's removal was

---

[7] County Defendants' unopposed request that the Court take judicial notice of court filings is hereby GRANTED. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (holding "court may take judicial notice of matters of public record") (internal quotation and citation omitted).

[8] As explained by the Court of Appeal, Wood did not seek review of the dispositional order, but, rather, of the detention and jurisdictional orders issued prior to the dispositional order. See In re B.P., 49 Cal. App. 5th 886, 889-90 (2020) (holding "detention and jurisdiction orders" are "interlocutory and nonappealable," but may be challenged "in a timely appeal of [a] dispositional order").

presented in Wood's appeal.[9]

As noted, the first criterion that must be met in order to bar consideration of an issue in a subsequent case is that the "identical" issue was decided in the prior case. See White, 671 F.3d at 927. Here, the Court of Appeal did not expressly decide whether Packwood's removal without a warrant was lawful, and County Defendants have not shown that, with respect to the removal, Packwood's situation was so similar to that of H.P. and K.P. that the Court of Appeal's finding as to H.P. and K.P. necessarily would be applicable to Packwood. In that regard, in determining the warrantless removal of H.P. and K.P. was lawful, the Court of Appeal found the social worker's belief that there existed an "immediate danger of physical abuse" was reasonable in light of H.P.'s and K.P.'s having "confirmed" to the social worker a "history of physical abuse" (see County Defs.' Req. for Jud. Notice Ex. A at 5); the record before this Court does not, however, include evidence of any such history as to Packwood nor does it contain evidence that the social worker reasonably believed there to be such history. Although the Court of Appeal also found the propriety of the removal was supported by the "condition of the house" (see id.), a condition that may have been equally applicable to Packwood, the record does not provide any detail as to such condition, and, more importantly, it is not clear that the Court of Appeal made a finding that such condition would, by itself, have supported the warrantless removal of H.P. and K.P.

Accordingly, County Defendants have not shown Packwood's Fourth Amendment claim is barred by collateral estoppel.

### b. Merits: Gutierrez and Sheriff Livingston

County Defendants argue Packwood has pleaded facts establishing the removal was proper, i.e., that, at the time of the seizure, Gutierrez and Sheriff Livingston had

---

[9] Wood did not appeal any decision made pertaining to Packwood, presumably because, as the California Court of Appeal noted, Packwood had been "returned to his mother's care during the course of the jurisdictional hearing and his [dependency] petition was dismissed following the dispositional hearing." (See id. at 1.)

10

"reasonable cause to believe" Packwood was "likely to experience serious bodily harm in the time that would be required to obtain a warrant." See Demaree, 887 F.3d at 878.  In support of their argument, County Defendants rely on Packwood's allegation that a former "live-in nanny," at some point in August 2017 prior to the date on which Gutierrez and Sheriff Livingston removed Packwood from the house, "trashed Wood's house, toppling some furniture, emptying cabinets, and spreading clean clothes on the floor, and various other acts."  (See AC Compl. ¶¶ 22, 26.)

The Court finds the allegations on which County Defendants rely are insufficient to negate Packwood's Fourth Amendment claim, in that it is unclear from the AC that said allegations describe the scene Gutierrez and Sheriff Livingston encountered when they arrived at the home.  Moreover, even assuming the allegations do describe the scene as witnessed by those two County employees, the Court is unable to conclude at the pleading stage that those conditions were, as a matter of law, sufficient to support a reasonable belief that Packwood was in danger of "experienc[ing] serious bodily harm" in the time it would have taken Gutierrez and Sheriff Livingston to obtain a warrant.  See Demaree, 887 F.3d at 878.

Accordingly, County Defendants have not shown the First Cause of Action is subject to dismissal as to Gutierrez and Sheriff Livingston.

### c. Merits: County, CFS, and Office of the Sheriff

Defendants argue that, to the extent the First Cause of Action is asserted against the County, CFS, and the Office of the Sheriff, the claim is subject to dismissal for failure to allege any facts to support a municipal liability claim.  As set forth below, the Court agrees.

A municipality may be sued under § 1983 where an allegedly unconstitutional act "implements or executes" a municipal policy or custom.  See Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).  Prior to 2009, the Ninth Circuit set a low threshold for pleading a municipal liability claim, requiring only "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  See Karim-

Panahi v. Los Angeles Police Department, 839 F.2d 621, 624 (9th Cir. 1988) (internal quotation and citation omitted). Today, however, in light of the Supreme Court's 2009 decision in Iqbal, which rejected "[t]hreadbare recitals of the elements of a cause of action[ ] supported by mere conclusory statements," see Iqbal, 556 U.S at 678, the Ninth Circuit now requires a complaint asserting a municipal liability claim "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," see AE ex rel. Hernandez, 666 F.3d, 631, 637 (9th Cir. 2012) (internal quotation and citation omitted).

Here, as County Defendants observe, Packwood fails to allege facts that give fair notice as to the nature of the policy, custom, or practice that he asserts was being implemented or executed by Gutierrez and Sheriff Livingston at the time of Packwood's removal from Wood's home; rather, he makes only conclusory allegations, which, in the absence of supporting facts, are insufficient. See Iqbal, 556 U.S. at 678; (see also, e.g., AC Compl. ¶ 47 (alleging individual County employees were "motivated" by county "policies, customs and practices . . . that place removal of children over constitutional rights").)

Accordingly, to the extent the First Cause of Action is asserted against the County, CFS, and the Office of the Sheriff, the claim is subject to dismissal.

**2. Second Cause of Action: Due Process under Fourteenth Amendment and Section 1983**

**a. Attempted Coercion/Perjurious Testimony**

County Defendants argue that, to the extent the Second Cause of Action is based on alleged attempted coercion of perjurious testimony and on providing perjurious testimony, the CFS employees whom Packwood alleges engaged in such acts are entitled to absolute immunity from claims brought under § 1983, and, additionally, that Packwood fails to allege facts to support municipal liability based on such alleged acts. As set forth below, the Court agrees.

First, with respect to alleged attempted coercion, the Ninth Circuit has held that

12

"conferring with potential witnesses regarding their knowledge of underlying events is plainly part of a prosecutor's preparation of his case," and, consequently, a claim under § 1983 that a prosecutor "induced" potential witnesses to "testify falsely" is a claim for which the prosecutor is entitled to absolute immunity. See Demery v. Kupperman, 735 F.2d 1139, 1143-44 (9th Cir. 1984) (noting "[t]he fact that inducing false testimony is wrongful and indefensible is not relevant to the question whether immunity attaches"). This holding applies equally to social workers; "[a]lthough child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor," and, consequently, "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." See Meyers v. Contra Costa County Dep't of Social Services, 812 F.2d 1154, 1157 (9th Cir. 1987) (noting, "[t]he social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children"; further noting, "[t]he social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit").

Second, with respect to alleged perjurious testimony, the Ninth Circuit has held that "witnesses are absolutely immune from suits for damages under . . . § 1983 for testimony given at trial." See Burns v. County of King, 883 F.3d 819, 821-23 (9th Cir. 1989) (holding social worker entitled to absolute immunity as to claim she made false statements in affidavit submitted to state court).

Lastly, to the extent the Second Cause of Action is based on alleged attempted coercion and perjury and is asserted against the County, CFS, and the Office of the Sheriff, the Court finds, for the reasons stated above with respect to the First Cause of Action, Packwood has failed to allege facts to support a municipal liability claim.

Accordingly, Packwood's due process claim is subject to dismissal to the extent it is based on alleged attempted coercion and perjurious testimony.

### b. Conditions of Confinement

County Defendants argue that all of the allegations in support of the Second Cause of Action are "conclusory." (See County Defs.' Mot. at 17:14.) With regard to the alleged injuries caused by the conditions of Packwood's custody, which is the sole remaining basis for Packwood's due process claim, the Court agrees.

"Where children are in state custody, the Fourteenth Amendment's substantive due process clause protects their liberty interest in social worker supervision and protection from harm inflicted by a third party." Cox v. Department of Social & Health Services, 913 F.3d 831, 837 (9th Cir. 2019) (internal quotation, alteration, and citation omitted). A social worker deprives a child of such liberty interest by acting with "deliberate indifference to a known[,] or so obvious as to imply knowledge of, danger." See id. (internal quotation and citation omitted).

Here, Packwood has identified only in a general manner the custodial conditions of which he complains. (See AC Summary ¶¶ 4, 9.) Additionally, he fails to allege facts to support a finding that any named County Defendant, or even any unnamed County employee, was aware that Packwood was being subjected to a risk of injury from the challenged conditions and nonetheless acted with deliberate indifference to such risk. See Cox, 913 F.3d at 837-38 (holding, as "applied to children in state custody, deliberate indifference requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that such a risk existed or that a reasonable official would have been compelled to draw that inference") (internal quotation and citation omitted). Moreover, for the reasons discussed above, Packwood fails to sufficiently allege a municipal liability claim.

Accordingly, to the extent Packwood's due process claim is based on injuries allegedly caused by the conditions of his custody, the claim is subject to dismissal.

//

14

### 3. Third Cause of Action: Conspiracy

County Defendants argue that Packwood's Third Cause of Action, by which he alleges "all" defendants have entered into a "conspiracy" to deprive him of his federal rights (see AC Compl. ¶¶ 68-69), fails due to the lack of any facts to support a finding that such a conspiracy existed.

All of Packwood's federal claims are, as set forth above, subject to dismissal with the exception of his Fourth Amendment claims against Gutierrez and Sheriff Livingston, and, as to those claims, Packwood alleges no facts to support a finding that any other County employees had an agreement with them, or, for that matter, with anyone, whether express or implied, to violate his Fourth Amendment rights. See Olsen v. Idaho State Board of Medicine, 363 F.3d 916, 929-30 (9th Cir. 2004) (affirming dismissal of claim alleging "conspiracy to violate constitutional rights," where complaint lacked factual allegations to support finding of "agreement amongst the [defendants] to violate [plaintiff's] constitutional rights").

Accordingly, the Third Cause of Action is subject to dismissal.

### 4. Fourth Cause of Action: Declaratory Judgment

County Defendants argue that Packwood's Fourth Cause of Action, by which he seeks a declaration that his removal violated the Fourth Amendment (see AC Compl. ¶ 76), should be dismissed for the reason it is subsumed within his § 1983 damages claim, i.e., the First Cause of Action. The Court agrees.

The Ninth Circuit has explained that where, as here, a plaintiff is proceeding with a § 1983 claim for damages, which claim "necessarily entails whether the officers' alleged conduct violated his rights, his separate request for declaratory relief is subsumed by his damages action." See Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005).

Accordingly, the Fourth Cause of Action is subject to dismissal.

### 5. Fifth Cause of Action: State Law Claims

In the Fifth Cause of Action, Packwood alleges that the "removal from his home" and "his subsequent detention" support claims under state law, specifically, claims for

1  false arrest and intentional infliction of emotional distress.  (See AC Compl. ¶¶ 77-79.)
2  County Defendants argue the Fifth Cause of Action is subject to dismissal for failure to
3  allege compliance with the claim presentation requirement set forth in the Government
4  Claims Act.

5  Subject to exceptions not relevant to Packwood's claims, see Cal. Gov. Code
6  § 905, a plaintiff must submit a claim for damages to a public entity prior to filing suit
7  against the entity, see Cal. Gov. Code § 945.4, or an employee of the entity, see Cal.
8  Gov. Code § 950.2.  "Compliance with the claims statutes is mandatory . . . and failure to
9  file a claim is fatal to the cause of action."  City of San Jose v. Superior Court of Santa
10 Clara County, 12 Cal. 3d 447, 454 (1974); see also State of California v. Superior Court,
11 32 Cal. 4th 1234, 1239 (2004) (holding "failure to timely present a claim for money or
12 damages to a public entity bars a plaintiff from filing a lawsuit against that entity").  Failure
13 "to allege facts demonstrating or excusing compliance with the claim presentation
14 requirements subjects a claim against a public entity to a demurrer for failure to state a
15 cause of action."  See State of California, 32 Cal. 4th at 1239.

16 The AC does not include an allegation that Packwood has presented his claims to
17 the County.

18 Accordingly, the Fifth Cause of Action is subject to dismissal.

19 **B.  Carey's Motion to Dismiss**

20 In the AC, Packwood alleges that Carey, whom he describes as a "County Court
21 appointed private-pay attorney" (see AC Summary ¶ 12), was counsel for Wood during
22 some unspecified portion of the dependency proceedings and that she did not adequately
23 represent Wood (see AC Summary ¶¶ 12, 14).

24 With regard to the First, Second, and Fourth Causes of Action, Carey argues, and
25 the Court agrees, that Carey is not a state actor, and, consequently, cannot be sued
26 under § 1983.  A claim under § 1983 requires a showing that the "alleged deprivation was
27 committed by a person acting under color of state law," see West v. Atkins, 487 U.S. 42,
28 48 (1988), and "an attorney, whether retained or appointed, does not act under color of

16

state law," see Szijarto v. Legeman, 466 F.2d 864, 864 (9th Cir. 1972) (internal quotation and citation omitted) (affirming dismissal of claim brought under § 1983, where plaintiff based claim on allegation his retained attorney "failed to render him reasonable assistance during a state criminal trial"); see also Whealton v. Riverside County Public Defenders Office, 2008 WL 2156725, *1, *3 (C.D. Cal. May 18, 2008) (dismissing claim brought under § 1983, where plaintiffs alleged attorneys appointed by state court in child dependency proceeding "failed to properly represent them during the dependency hearing").

With regard to the Third Cause of Action, Carey argues, and the Court agrees, that, as discussed above with respect to County Defendants' motion to dismiss, Packwood fails to allege facts to support a finding that a conspiracy existed to deprive him of his rights.

Lastly, with regard to the Fifth Cause of Action, which, as noted above, asserts state law claims based upon Packwood's removal and detention, Carey argues, and the Court agrees, that the AC contains no factual allegations to support a finding that Carey had any involvement in the allegedly improper removal of Packwood from his home or his subsequent detention.

Accordingly, Carey's motion to dismiss Packwood's claims against her will be granted.

**C. Bains' Motion to Dismiss**

In the AC, Packwood, as noted, alleges Erica Bains called CPS and the Office of the Sheriff to "falsely state[ ] that Wood's children were in danger." (See AC Compl. ¶ 28.) In addition, Packwood alleges that, after he was removed from Wood's home, the Bains "went through the process to become approved Foster Care parents" (see AC Compl. ¶ 29) and that Ravinder Bains, at some point after he become a foster parent, "molested" Packwood (see AC Summary ¶ 9).

//

//

The Bains argue that the Court should decline to exercise jurisdiction over the instant action under the Younger doctrine. See Younger v. Harris, 401 U.S. 37 (1971).[10]

"The Younger doctrine, which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." Moore v. Sims, 442 U.S. 415, 423 (1979). Under the Younger doctrine, "abstention is appropriate in favor of a state proceeding if (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions." See Beltran v. California, 871 F.2d 777, 781 (9th Cir. 1988) (internal quotation and citation omitted). Here, however, the instant action was filed on May 6, 2022, and Packwood's dependency proceeding was dismissed more than two years prior to that date. (See County Defs.' Req. for Jud. Notice Ex. A at 1 (California Court of Appeal decision, dated January 21, 2020, observing Packwood's petition had been "dismissed").)

The Court finds, however, that the federal claims asserted by Packwood against the Bains are subject to dismissal on the merits. First, as the Bains correctly point out, the AC includes no facts to support a finding that the Bains acted under color of state law, see West, 487 U.S. at 48, and, consequently, the First, Second, and Fourth Causes of Action are subject to dismissal. Additionally, the Bains argue, and the Court agrees, that Packwood, as discussed above with respect to County Defendants' motion to dismiss, fails to allege facts to support a finding that a conspiracy existed to deprive Packwood of his rights, and, consequently, the Third Cause of Action is subject to dismissal.

With regard to the Fifth Cause of Action, i.e., Packwood's state law claim, the Bains argue that if the Court lacks jurisdiction over the federal claims, the Court cannot

---

[10] Although the Bains do not expressly refer to the Younger doctrine, the authority on which they rely, Coats v. Woods, 819 F.2d 236 (9th Cir. 1987), addresses the "application of Younger abstention," see Bechdoldt v. Loveland, 2011 WL 867858, at *2 (D. Ore. March 10, 2011).

exercise supplemental jurisdiction over the state law claims, see Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 664 (9th Cir. 2002) (holding, where federal claims are dismissed for lack of subject matter jurisdiction, district court has "no discretion to retain supplemental jurisdiction over [plaintiff's] state law claims"), or that if the Court finds it has jurisdiction over the federal claims but dismisses them, the Court should decline to exercise supplemental jurisdiction, see 28 U.S.C. § 1367(c)(3) (providing district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").  As discussed above, however, other than for a portion of the Second Cause of Action, the Court has jurisdiction over Packwood's federal claims, and, although it has dismissed most of those remaining federal claims, it has not dismissed the First Cause of Action to the extent such claim is alleged against Gutierrez and Sheriff Livingston.  Consequently, the Court will, at least at this stage of the proceedings, exercise supplemental jurisdiction over the Fifth Cause of Action.

        Accordingly, the Bains have not shown the Fifth Cause of Action, to the extent asserted against them, is subject to dismissal.

## CONCLUSION

        For the reasons stated above:

        1. Wood's request that her claims be voluntarily dismissed is hereby GRANTED, and defendants' motions to dismiss, to the extent they seek dismissal of Wood's claims, are hereby DENIED as moot.

        2. With regard to Packwood's claims,

          a. County Defendants' motion to dismiss is hereby GRANTED, with the exception that, as to the First Cause of Action, to the extent asserted against Gutierrez and Sheriff Livingston, the motion is hereby DENIED.

          b. Carey's motion to dismiss is hereby GRANTED.

          c. The Bains' motion is hereby GRANTED, with the exception that, as to the Fifth Cause of Action, the motion is hereby DENIED.

        3. Should Packwood wish to amend for purposes of curing any of the deficiencies

identified above, he shall file a Second Amended Complaint no later than 21 days from the date of this order; Packwood may not, however, add any new claims or new defendants without first obtaining leave of court.  See Fed. R. Civ. P. 15(a)(2).  If Packwood does not file a Second Amended Complaint within the time provided, the instant action will proceed on the remaining claims in the AC.

**IT IS SO ORDERED.**

Dated: April 7, 2023

MAXINE M. CHESNEY
United States District Judge